UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

HOWARD L. DEAN                                              CIVIL ACTION

VERSUS
                                                           NO. 19-137-BAJ-RLB
SHELL PIPELINE COMPANY, LP

ORDER

Before the Court is Plaintiff's Motion to Compel. (R. Doc. 17).  The motion is opposed. (R. Doc. 18).  Plaintiff has filed a reply. (R. Doc. 25).

Also before the Court is Defendant's Motion for Protective Order and Motion to Quash Rule 30(b)(6) Deposition Notice ("Motion for Protective Order"). (R. Doc. 20).  The motion is opposed.  (R. Doc. 26).  Plaintiff has filed a reply. (R. Doc. 31).  Defendant has filed a surreply. (R. Doc. 40).

Also before the Court is Plaintiff's Motion for Expedited Consideration. (R. Doc. 27).

I.      Background

On March 6, 2019, Howard L. Dean ("Plaintiff") commenced this action to obtain relief under the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 *et seq.* (R. Doc. 1).  Plaintiff has filed a First Amended and Supplemental Complaint. (R. Doc. 3).

Plaintiff alleges that he was employed by the defendant Shell Pipeline Company LP ("Defendant" or "Shell") as a Mechanical Technician for nearly 16 years until his termination at the age of 64. (R. Doc. 3 at 4).  Plaintiff alleges that in June of 2016, Defendant offered Plaintiff an early retirement/severance package while he was being investigated for business practices involving high costs and preferential choice of a vender (Gulf Crane Services). (R. Doc. 3 at 4).  Plaintiff alleges that on August 16, 2016 he participated in a meeting with his immediate

supervisor (Tim Carter), Mr. Carter's supervisor (Wiley Stice), and a human resources representative, in which the retirement/severance package was again offered and his age was provided as a reason it was offered. (R. Doc. 3 at 5-6).  Plaintiff did not accept the package.

On January 4, 2017, Plaintiff received a letter providing that he was terminated (effective January 7, 2017) for violating Shell's Code of Conduct and General Business Principals. (R. Doc. 3 at 6-7).  Plaintiff alleges that he was terminated from his employment based on his age in violation of the ADEA. (R. Doc. 3 at 8-9).

Plaintiff's Motion to Compel concerns Plaintiff's first interrogatories and requests for production served on August 2, 2019. (R. Doc. 17-2).  Defendant provided objections and responses on October 2, 2019. (R. Doc. 17-4).  Defendant provided amended responses on October 11, 2019. (R. Doc. 17-5).  Plaintiff represents that Defendant produced over 2,000 pages of documents with their amended responses. (R. Doc. 17 at 2).  On November 24, 2019, Plaintiff's counsel sent a letter to defense counsel asserting various alleged deficiencies with Defendant's responses and production. (R. Doc. 17-7).  The parties held a discovery conference on December 2, 2019. (R. Doc. 17 at 3).  On December 16, 2019, Defendant provided its second amended responses. (R. Doc. 17-8).  Plaintiff represents that Defendant produced an additional 2,455 pages of documents with the second amended responses. (R. Doc. 17 at 3).  Defendant also produced a privilege log. (R. Doc. 17-9).

Through his Motion to Compel, Plaintiff seeks an order requiring Defendant: (1) to produce un-redacted versions of documents already produced; (2) to produce un-redacted versions of documents in response to Request for Production Nos. 4-7 and 23; (3) to produce documents responsive to Request for Production Nos. 13 and 17; (4) to answer Interrogatory No. 5; and (5) to pay reasonable attorney's fees incurred in bringing the motion. (R. Doc. 17-1 at 10).

2

Plaintiff represents that Defendant produced the following Bates numbered pages in redacted form: SHELL_00000444-479, 1120-1123, 1127-1128, 1131-1144, 1158-1163, 1164-1167, 1171, 1185-1198, 1204, 1207, 1228, 1482, 1573-1574, 1790-1858, 1965, 2740, 2751-2752, 2757-2771; 2773-2775, 2777, 2778, 2783, 2786-2788, 2861-2863, 2865-2866, 4017, 4018, 4024, 4027, 4029, 4030, 4032, 4034, 4035, and 4036. (R. Docs. 17, 17-1 at 6-7, 10). Plaintiff asserts that the following Bates numbered pages were also produced in redacted form on the basis of the attorney-client privilege and/or the work product doctrine: SHELL_00001482, 2783, 4017, 4024, 4030, 4034, and 4035. (R. Doc. 17-1 at 7). Plaintiff has withdrawn the Motion to Compel with respect to Requests for Production Nos. 4-6. (R. Doc. 25 at 9).

Defendant's Motion for Protective Order concerns Plaintiff's Notice of Defendant's Rule 30(b)(6) Deposition and Request for Production of Documents served on November 18, 2019. (R. Doc. 20-1). On January 3, 2020, Defendant provided its objections to the deposition notice and document requests and produced certain documents. (R. Doc. 20-2). Defendant now seeks an order quashing Deposition Topics (e)-(h) and Document Request Nos. 5-8. (R. Doc. 20-5 at 12).

## II.     Law and Analysis

### A.     Legal Standards for Discovery

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within

this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).  Blanket assertions of a privilege are unacceptable, and the court and other parties must be able to test the merits of a privilege claim. *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982) (citing *United States v. Davis,* 636 F.2d 1028, 1044 n. 20 (5th Cir. 1981)).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories.  A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items.  A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a).  The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

A party must respond or object to interrogatories and requests for production. *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A).  This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b).  If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37.  An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

Rule 30(b)(6) governs deposition notices directed to organizations.  In the deposition notice, the party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6).  In response, the organization must designate an agent or other person to testify on its behalf "about information known or reasonably available to the organization." *Id*. "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from

documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). The court may limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous. *See, e.g., Scioneaux v. Elevating Boats, LLC*, No. 10-0133, 2010 WL 4366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, No. 05-4182, 2008 WL 4833023 (E.D. La. July 2, 2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous); *Padana Assicurazioni–Societa Azioni v. M/V Caribbean Exp.*, No. 97-3855, 1999 WL 30966 (E.D. La. Jan. 21, 1999) (denying motion to compel Rule 30(b)(6) deposition where the notice was insufficiently particularized).

## B. Plaintiff's Motion to Compel

### 1. Requests for Production Nos. 3, 9, 14, and/or 19

Defendant represents that the following redacted documents were produced in response to Requests for Production Nos. 3, 9, 14, and/or 19: SHELL_00000444-479, 1207, 1482, 1790-1858, 1965, 2740, 2783, 4017, 4018, 4024, 4027, 4029, 4032, 4034-4036. The document requests are as follows:

> **Request for Production No. 3**
> Please produce a complete and correct copy of Plaintiff's personnel file, whether formal or informal, including all supervisor files, all human resource files, PPR files, sign in/sign out sheets, employment application materials, all correspondence to and from Plaintiff, all claims of discrimination made by Plaintiff, all complaints of any kind made by Plaintiff, and all reviews of the Plaintiff's job performance.

> **Request for Production No. 9**
> Please produce a complete and correct copy of any and all documents evidencing, referring to, or created during the scope of any investigation, counseling session,

or meeting held by Defendant or any of its agents/employees concerning the
Plaintiff.

**Request for Production No. 14**
Please produce a complete and correct copy of every document which shows:

> a. basic payroll and identifying employee data for the Plaintiff including
> his position(s);
> b. rate or basis of pay and terms of compensation to include annual
> vacation time and sick time;
> c. daily and weekly hours worked per pay period;
> d. any and all bonuses, raises or incentive payments made to Plaintiff and
> the means by which such payments were calculated;
> e. additions to or deductions from wages for health care, disability
> insurance, retirement, dental, and life insurance; and
> f. total compensation paid to the Plaintiff during the duration of his
> employment with the Defendant.

**Request for Production No. 19**
Please produce a complete and correct copy of all documents which you believe
support any and all denials and/or defenses to the allegations in Plaintiff's
complaint and/or amended complaint.

(R. Doc. 17-2 at 4-5).  In response to these discovery requests, Defendant raised various

objections, including irrelevance and confidentiality. (*See* R. Doc. 17-4 at 3, 9, 13, 17-18).

Defendant now argues that the redactions were proper as they pertain to "immaterial

identifications and/or data/information of non-party current and/or former Shell employees" that

were nonresponsive to the actual document requests. (R. Doc. 18 at 5).

Having considered the arguments of the parties, the Court will require Defendant to

produce the documents without redactions.  Defendant's confidentiality arguments lack merit.

The Court has entered an Agreed Protective Order governing the exchange of confidential

information in this action sought by the parties on joint motion. (R. Doc. 14).  The Agreed

Protective Order specifically allows Defendant to identify as confidential or highly confidential

the following information:

a. Any of Shell's confidential business and/or financial information, trade secrets, and any proprietary, commercial, or business information.
b. Any of Mr. Dean's medical, tax or compensation records;
c. Any of Shell's proprietary employee training materials, documents, and/or information.
d. Any of Shell's proprietary written policies or procedures.
e. Any documents and/or information concerning Shell's (or a related entity's) current or former employees who are not parties to this suit.

(R. Doc. 14 at 2). Given Defendant's agreement that such information could be produced without redactions as contained in the Agreed Protective Order, the Court finds no basis for allowing the selective redactions of otherwise responsive documents on the basis of confidentiality.

Furthermore, the underlying document requests include communications involving Plaintiff and documents found in Plaintiff's personnel file. Defendant has not specifically identified the source of the documents that were redacted on the basis of confidentiality and/or nonresponsiveness.

Accordingly, Defendant must produce the following documents without redactions within **7 days** of the date of this Order unless the redactions are based upon the attorney-client privilege as discussed below: SHELL_00000444-479, 1207, 1482, 1790-1858, 1965, 2740, 2783, 4017, 4018, 4024, 4027, 4029, 4032, 4034-4036.[1]

## 2.    Request for Production No. 7

Defendant represents that the following redacted documents are responsive to Request for Production Request for Production No. 7: SHELL_00001120-1123, 1127-1128, 1131-1144, 1158-1163, 1164-1167, 1171, 1185-1198, 1204, 2757-2771, 2773-2775, 2777, 2778, 2786-2788, 2861-2863, and 2865-2866. (R. Doc. 18 at 5 n. 27). The document request is as follows:

---

[1] Defendant raises no arguments with respect to SHELL_1228 and 2751-52. These documents do not appear on Defendant's privilege log. (R. Doc. 17-9). The production of these documents without redactions is ordered to take place within **7 days** of the date of this Order.

**Request for Production No. 7**
Please produce all documents outlining the planning and criteria used to select
employees to be retained and/or be terminated.

(R. Doc. 17-2 at 4).  In response to this discovery request, Defendant raised various objections,

including irrelevance and confidentiality. (*See* R. Doc. 17-4 at 7-8)

Defendant represents that in response to this request it produced 76-pages of documents

"related to the voluntary severance program in which Dean and all employees who worked at his

location (regardless of age) were asked if they were interested." (R. Doc. 18 at 6).  Defendant

argues that the redactions to these documents included "very sensitive identifications and/or

data/information regarding non-party current and/or former Shell employees or employees of

another entity, some of whom were not in the same job classification as Dean and/or did not

work from the same location as Dean" and that this information is "not responsive to Request

No. 7 as written." (R. Doc. 18 at 6).  Defendant argues that the information is otherwise not

discoverable because it is irrelevant and not proportional to the needs of the case because no

employees were in fact terminated as part of the voluntary severance program. (R. Doc. 18 at 6-

7).

Plaintiff specifically "alleges that Shell did not terminate him due to any violations of the

Code of Conduct and the undisclosed General Business Principles, but because of his age." (R.

Doc. 3 at 8).  Plaintiff further alleges that "Shell offered the Plaintiff a voluntary early

retirement/severance package in a telephone meeting with Tim Carter, his immediate supervisor,

and Wiley Stice, Mr. Carter's immediate supervisor. Plaintiff was sixty-three (63) years old at

this time." (R. Doc. 3 at 4).  Accordingly, the information sought with respect to the

retirement/severance package is relevant to Plaintiff's claims.

As discussed further below, the Court will allow Plaintiff to depose Defendant with respect to mechanical technicians and electrical technicians who work and/or worked in groups reporting to Tim Carter within 5 years of Plaintiff's termination, aged fifty (50) years old and older, who were offered the severance/retirement benefits package similar to the one which was offered to Plaintiff. Defendant must un-redact information in the instant production pertaining to technicians who fall within the foregoing scope. Any remaining information pertaining to other employees may remain redacted.

Accordingly, Defendant must produce the following documents without redactions, to the extent required above, within **7 days** of the date of this Order: SHELL_00001120-1123, 1127-1128, 1131-1144, 1158-1163, 1164-1167, 1171, 1185-1198, 1204, 2757-2771, 2773-2775, 2777, 2778, 2786-2788, 2861-2863, and 2865-2866. (R. Doc. 18 at 5 n.27).

### 3.    Request for Production No. 23

Defendant represents that only portions of the following redacted document is responsive to Requests for Production Request for Production No. 23:  SHELL_00001573-1574.  (R. Doc. 18 at 7).  The request for production is as follows:

> **Request for Production No. 23**
> Please produce a complete and correct copy of all correspondence or documents you sent to and/or received from any governmental entity including, but not limited to, the Louisiana Commission on Human Rights, the Louisiana Employment Commission or the Equal Employment Opportunity Commission regarding Plaintiff's employment with Defendant or the ending of Plaintiff's employment with Defendant.

(R. Doc. 17-2 at 4-6).  In response to this discovery request, Defendant raised various objections, including irrelevance and confidentiality. (*See* R. Doc. 17-4 at 20-21).

Defendant represents that the redacted communications, which Defendant asserts are non-responsive, "are between employees of Shell's human resources department concerning the

handling of EEOC charges filed by Dean and another employee from a work group/location different from Dean." (R. Doc. 18 at 7).   Given Defendant's representations, this information is not responsive to Request for Production No. 23.

Accordingly, Defendant need not produce the document (SHELL_00001573-1574) without redactions.[2]

### 4.       Requests for Production Nos. 13 and 17 and Interrogatory No. 5

Plaintiff seeks an order compelling full responses to Requests for Production Nos. 13 and 17 and Interrogatory No 5. (R. Doc. 17-1 at 9-10).  In opposition, Defendant represents that it intended to fully respond to those discovery requests within seven days of the filing of the opposition. (R. Doc. 18 at 12-13).  Plaintiff sought leave to file his reply after that seven day period expired. (R. Doc. 22).  Other than arguing that redactions to a document produced in response to Request for Production No. 23 is responsive to Request for Production No. 17, Plaintiff's Reply raises no arguments regarding the insufficiency of Defendant's responses to these discovery requests. (*See* R. Doc. 25).

While it appears that this issue is moot, given the lack of any opposition with respect to this issue, the Court will order Defendant to fully respond to Request for Production Nos. 13 and 17, as well as Interrogatory No. 5, to the extent it has not done so, within **7 days** of the date of this Order.

---

[2] Contrary to Plaintiff's assertions, these communications are not responsive to Request for Production No. 17, which seeks "all petitions, complaints Equal Employment Opportunity Commission Charges of Discrimination, and Louisiana Commission on Human Rights charges filed in the last ten (10) years alleging that the Defendant discriminated against any employee because of their age." (*See* R. Doc. 25 at 10 n.7).  To the extent SHELL_00001573-1574 *references* an EEOC petition or complaint by another employee that pertains to age discrimination, the actual complaint or petition may be responsive to Request for Production No. 17 and produced in the supplemental production.

5.        **Attorney-Client Privilege and Work Product Protection**

Plaintiff argues that the following documents were wrongly listed on Defendant's

privilege log on the basis of the attorney-client privilege and work product doctrine:

SHELL_00001482, 2783, 4017, 4024, 4030, 4034, and 4035. (R. Doc 17-1 at 3-7).

Federal common law governs claims of attorney-client privilege in this action. Fed. R.

Evid. 501.  The party asserting the attorney-client privilege has the burden of proving: "(1) that

he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary

purpose of securing either a legal opinion or legal services, or assistance in some legal

proceeding." *U.S. v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997).

Rule 26(b)(3) of the Federal Rules of Civil Procedure restricts a party's ability to obtain

work product from an opponent during discovery.  Work product consists of "documents and

tangible things that are prepared in anticipation of litigation or for trial by or for another party or

its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or

agent)." Fed. R. Civ. P. 26(b)(3)(A).  The work product protection is broader in scope and reach

than the attorney client privilege.  The attorney-client privilege "extends only to client

communications, while the work product protection encompasses much that has its source

outside client communications." *Stoffels v. SBC Communications, Inc.*, 263 F.R.D. 406, 412

(S.D. Tex. 2009).

Plaintiff argues that the redacted portions of the documents are not protected by the

attorney-client privilege or work product doctrine because they involve communications between

non-attorneys, or consist of documents prepared or received by non-attorneys. (R. Doc 17-1 at 6-

7).  In opposition, Defendant represents that Plaintiff did not hold a proper discovery conference

with respect to these documents after the production of the privilege log and prior to the filing of

12

the instant motion. (R. Doc. 18 at 7).  Defendant also argues that the documents are protected under the attorney-client privilege because they concern communications by Defendant's non-attorney employees with respect to legal advice provided by Defendant's attorneys. (R. Doc. 18 at 7-8).  Defendant does not raise any argument that the documents were properly withheld on the basis of the federal work product doctrine.

Given the record, the Court will require Defendant to produce an updated privilege log identifying the attorneys providing the underlying legal advice withheld as attorney-client privileged with **7 days** of the date of this Order.  Plaintiff may renew any challenge to the sufficiency of the privilege log within **14 days** of the date of this Order, but only after holding a discovery conference with Defendant in an attempt to resolve the issue without further court intervention.

## C.    Defendant's Motion for Protective Order

Defendant's Motion for Protective Order concerns whether Defendant must produce a Rule 30(b)(6) corporate representative to testify on Topics (e)-(h) of Plaintiff's deposition notice and whether Defendant must produce documents response to Document Requests Nos. 5-8 served with the deposition notice.  The deposition topics and documents requests are as follows:

> **Topic (e)**
> The identity, and age, of all offshore maintenance technicians employed and/or formerly employed by Shell in the Offshore Craft Maintenance Division based in Gibson Louisiana who were offered the severance/retirement package similar to the one which was offered to Mr. Dean.

> **Topic (f)**
> The identity and age, of all offshore maintenance technicians employed and/or formerly employed by Shell in the Offshore Craft Maintenance Division based in Gibson Louisiana who were eligible for retirement when Mr. Dean was offered the severance/retirement package, and the reason/(s) these persons were eligible for the severance/retirement package.

**Topic (g)**
The identity and ages of all current Shell employees in the Offshore Craft Maintenance Division based in Gibson Louisiana who are similarly situated to Mr. Dean in terms of compensation most recently earned, and/or position most recently held in comparison to Mr. Dean's compensation and/or position at termination.

**Topic (h)**
The identity and ages of all former Shell employees in the Offshore Craft Maintenance Division based in Gibson Louisiana within the last ten (10) years who were similarly situated to Mr. Dean in terms of compensation most recently earned, and/or position most recently held in comparison to Mr. Dean's compensation and/or position at termination, why those persons are no longer employed with Shell, when they were separated from their employment with Shell and why.

**Document Request No. 5**
A copy of any and all correspondence, letters, emails, notes, text messages or documents of any kind regarding the identity and age, of all offshore maintenance technicians employed and/or formerly employed by Shell in the Offshore Craft Maintenance Division based in Gibson Louisiana / no. of employees there?) who were offered the severance /retirement package similar to the one which was offered to Mr. Dean.

**Document Request No. 6**
A copy of any and all correspondence, letters, emails, notes, text messages or documents of any kind regarding the identity and age, of all offshore maintenance technicians employed and/or formerly employed by Shell in the Offshore Craft Maintenance Division based in Gibson Louisiana who were eligible for retirement when Mr. Dean was offered the severance/retirement package, and the reason/(s) these persons were eligible for the severance/retirement package.

**Document Request No. 7**
A copy of any and all correspondence, letters, emails, notes, text messages or documents of any kind regarding the identity and ages of all current Shell employees in the Offshore Craft Maintenance Division based in Gibson Louisiana who are similarly situated to Mr. Dean in terms of compensation most recently earned, and/or position most recently held in comparison to Mr. Dean's compensation and/or position at termination.

**Document Request No. 8**
A copy of any and all correspondence, letters, emails, notes, text messages or documents of any kind regarding the identity and ages of all former Shell employees in the Offshore Craft Maintenance Division based in Gibson Louisiana within the last ten (10) years who were similarly situated to Mr. Dean in terms of compensation most recently earned, and/or position most recently held in

comparison to Mr. Dean's compensation and/or position at termination, why those persons are no longer employed with Shell, when they were separated from their employment with Shell and why.

(R. Doc. 20-1).

Defendant provided various objections based on irrelevance, proportionality, and confidentiality. (R. Doc. 20-2).  After the parties held a discovery conference, Plaintiff agreed "to restrict the time period to the past 5 years, as to all mechanical technicians and electrical technicians who work and/or worked in groups reporting to Wylie Stice" and otherwise limited the information sought to individuals aged fifty (50) years old and older at the time they were offered the severance/retirement package or were separated from their employment. (R. Docs. 20-3, 20-4).  Defendant now argues that the information sought is overly broad, irrelevant, confidential, and not proportional to the needs of this case. (R. Doc. 20-5 at 9-11).

To the extent Defendant objects to the deposition on the basis that the topics seek attorney-client privileged or confidential information, its counsel may make appropriate objections pursuant to Rule 30(c)(2) or follow the procedures in the Agreed Protective Order for designating as "confidential" portions of depositions.  Consistent with the Court's foregoing rulings with respect to Plaintiff's written discovery, Defendant's objections based on confidentiality do not provide a basis for quashing the deposition topics or written document requests served with the deposition notice.

The scope of discovery includes information pertaining to similarly situated employees to the extent that it is proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1).  Courts have allowed discovery of other claims of discrimination against an employer where limited to the same form of discrimination, the same department or agency where the plaintiff worked, and a reasonable time before and after the discrimination occurred. *Minnis v. Bd. of Sup'rs of*

*Louisiana State Univ. Agric. & Mech. Coll.*, No. 13-5, 2013 WL 6271940, at *8 (M.D. La. Dec. 4, 2013), *objections overruled*, 2014 WL 12811456 (M.D. La. Aug. 15, 2014).  The relevant timeframe is case specific, but courts have generally limited discovery of other employee's claims of discrimination to 3 to 5 years. *Id*.

Defendant argues that Plaintiff's proposal to "limit Topics (e)-(h) to mechanical and electrical technicians that were in groups that reported to Stice for the past five years" does not resolve Defendant's objections because that would require the corporate representative to testify on information pertaining to over 50 and possibly more than 75 individuals and would amount to the production of irrelevant statistical information in a single disparate treatment case. (R. Doc. 20-5 at 9-10).  Defendant similarly argues that the corresponding documentary information sought with respect to each of these individuals is overly broad. (R. Doc. 20-5 at 11).  Defendant asserts that "[t]he only relevant comparators would be employees who were in the same position (*i.e.*, mechanical – not electrical – technicians), in the same workgroup (*i.e.*, Carter's), worked under the same supervisor, and committed the same infractions as Dean and either were or were not terminated." (R. Doc. 20-5 at 10).

In opposing the limitations sought by Defendant, Plaintiff argues that he is entitled to obtain non-comparator evidence for the purposes of conducting a "statistical analysis." (R. Doc. 26).[3]  Among other things, Plaintiff argues that the restrictions sought by Defendant would limit the discovery to just 15 employees and would improperly be limited to Defendant's own asserted basis for terminating Plaintiff's employment, *i.e.*, for violating Defendant's Code of Conduct and

---

[3] Plaintiff's sur-reply sets forth the proposition that Plaintiff is not limited to comparator evidence to establish a prima facia case of age discrimination and that statistical information is relevant to individual disparate treatment claims. (R. Doc. 40).  As discussed below, while statistical information is not *per se* irrelevant to individual disparate treatment claims, the scope of statistical information sought by Plaintiff in this action is disproportionate to the needs of the case.

General Business Principles. (R. Doc. 26 at 4).  The Court agrees with Plaintiff that discovery with respect to other Shell employees should not be limited to Defendant's own asserted basis for terminating his employment.  Plaintiff does not, however, raise any convincing argument in support of a finding that specific discovery regarding individuals outside of the supervision of Plaintiff's own immediate supervisor, Tim Carter, is proportional to the needs of this case.

Plaintiff's deposition topics and document requests, as original written, seek a wide-range of information pertaining to current and former employees at Defendant's Offshore Craft Maintenance Division in Gibson, Louisiana.  The Court agrees with Defendant the deposition topics and document requests are facially overly broad as they seek information without temporal limitation (with the exception of one topic and document request limited to the last ten years) and are not limited to other employees supervised by Mr. Carter.  While Plaintiff has agreed to limit this overly broad discovery to a certain extent, the Court finds the disproportionate breadth of information sought (even as limited by Plaintiff) to require further limitation.

Plaintiff acknowledges that the discovery at issue is directed at obtaining statistical evidence with respect to Defendant's employees and Defendant's treatment of those employees based on age.  Statistical evidence may be relevant in individual disparate treatment actions. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999) ("Statistical evidence can be utilized by an individual disparate treatment plaintiff to help rebut the employer's non-discriminatory explanation. However, more than statistics are usually necessary to rebut an employer's strong showing of a legitimate, non-discriminatory reason for discharging a particular employee. . . .") (citations omitted); *Baylie v. Fed. Reserve Bank of Chicago*, 476 F.3d 522, 524 (7th Cir. 2007) (affirming summary judgment in favor of employer in de-certified class

17

action where the remaining two plaintiffs relied heavily on an expert report based on statistical evidence, noting that statistical analysis has some "technical" relevance in an individual disparate-treatment claim).  The method of proving disparate treatment through statistical evidence, however, is generally the province of "pattern or practice" employment discrimination claims or class action disparate impact claims.  *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 339 (1977) (statistical evidence is competent to prove systemwide pattern or practice of employment discrimination); *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1285 (5th Cir. 1994) (statistical evidence may establish prima facie case of disparate treatment in class action); *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 568 (5th Cir. 1988) (same); *see also Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984) ("The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking.") (internal quotation marks and citations omitted).

In this action, however, the overly broad amount of statistical information sought by Plaintiff falls outside the scope of discovery as it is unlimited in subject matter and temporal scope.  The instant action concerns a single individual's allegations of age discrimination.  Plaintiff has not alleged "pattern or practice" claims or class-wide allegations of disparate impact.  Generally speaking, Plaintiff has failed to demonstrate that the full broad-range statistical evidence sought in this individual ADEA action falls within the scope of discovery.  *See Marchese v. Secretary, Dep't of the Interior,* No. 03-3082, 2004 WL 2297465, at *1 (E.D. La. Oct. 12, 2004).  Given the limited scope of Plaintiff's individual claims, the decades of

employment information sought by Plaintiff (in the topics and document requests as originally drafted) amount to a "fishing expedition in the hope of finding similarly situated employees who were [] discriminated against or were treated different." *See Scott v. E.I. DuPont de Nemours & Co.*, No. 14-391, 2015 WL 5472930, at *2 (M.D. La. Sept. 16, 2015).

Given the foregoing, and taking into consideration Plaintiff's own attempts to narrow the scope of information sought, the Court will limit the scope of Topics (e)-(h) to the following information:

**Topic (e)**
The identity and age of all mechanical technicians and electrical technicians who work and/or worked in groups reporting to Tim Carter within 5 years of Plaintiff's termination, aged fifty (50) years old and older, who were offered the severance/retirement benefits package similar to the one which was offered to Plaintiff and whether the severance/retirement package was accepted or rejected and why.

**Topic (f)**
The identity and age of all mechanical technicians and electrical technicians who work and/or worked in groups reporting to Tim Carter within 5 years of Plaintiff's termination, aged fifty (50) years old and older, who were who were eligible for retirement benefits when Plaintiff was offered the severance/retirement package and the reason(s) these persons were eligible for the severance/retirement package.

**Topic (g)**
The identity and age of all mechanical technicians and electrical technicians reporting to Tim Carter within 5 years of Plaintiff's termination, aged fifty (50) years old and older.

**Topic (h)**
The identity and age of all former mechanical technicians and electrical technicians who worked in groups reporting to Tim Carter within 5 years of Plaintiff's termination, aged fifty (50) years old and older, who are no longer employed with Shell and when and why they were separated from their employment with Shell.

While the Court will allow the foregoing limited questioning with respect to certain technicians supervised by Tim Carter, the Court will not require Defendant to respond to

Document Request Nos. 5-8.  These document requests are overly broad and disproportionate to the needs of this case.  Requiring Defendant to respond to these document requests would subject Defendant to undue burden.  To fully respond to these document requests, which seek "any and all correspondence, letters, emails, notes, text messages or documents of any kind" related to the information sought in Topics (e)-(h), would require Defendant to collect, review, and produce documents from the personnel files of 50-75 individuals.  It would also require Defendant to identify various custodians and collect, review, and produce documents in the possession of those custodians.  Even if limited to correspond to Topics (e)-(h) as limited by this Order, the document requests would require the collection, review and production of documents related to approximately 25 other individuals.  Should Defendant's Rule 30(b)(6) deposition testimony identify specific individuals whose documents are relevant and proportional to the needs of this case, then Plaintiff may seek limited written discovery pertaining to those individuals.

## III.    Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Compel (R. Doc. 17) is **GRANTED IN PART.**  Defendant must provide supplemental responses as defined within this Order within **7 days** of the date of this Order.

**IT IS FURTHER ORDERED** that Defendant's Motion for Protective Order and Motion to Quash Rule 30(b)(6) Deposition Notice (R. Doc. 20) is **GRANTED IN PART and DENIED IN PART**.  Defendant's Rule 30(b)(6) deposition shall take place by **June 30, 2020** or as otherwise agreed upon by the parties based on the scheduling order deadlines and the COVID-19 pandemic.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Expedited Consideration (R.

Doc. 27) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on May 29, 2020.

**RICHARD L. BOURGEOIS, JR.**

21